MARIA L. COURTNEY, *as Executrix of the Estate of William C. Courtney, deceased,* v. L. R. STAUDENMAYER, SR., *et al.*

No. 7671.

LAPSE OF TIME—*Presumption of Payment.* Where, 27 years after the maturity of a series of promissory notes and the last indorsement of interest paid thereon, an action was brought upon the notes and to foreclose a mortgage given to secure them, *held,* that although the statute of limitations was not a bar because of the non-residence and absence of the defendants, yet the lapse of time raised a presumption of payment, which was not overcome by the facts found and the evidence received or offered.

*Error from Atchison District Court.*

ON July 17, 1858, L. R. Staudenmayer, sr., a single man and a resident of Atchison, Kan., executed and delivered to William C. Courtney a mortgage on the southeast ¼ of section 26, township 5, range 20, in Atchison county, to secure four promissory notes for $500 each, payable to the order of said William C. Courtney at the Bank of Charleston, in Charleston, S. C., the last of the same being due October 1, 1859.

On November 16, 1858, said L. R. Staudenmayer, sr., married Elizabeth L. Conner, of Charleston, S. C., a daughter of Henry W. Conner, and a niece of said William C. Courtney. Staudenmayer returned with his wife to Atchison, where they remained until January, 1860, when they left for the south and never afterward returned. While they were residing at Atchison, and on July 29, 1859, Staudenmayer conveyed the mortgaged land to his wife. L. R. Staudenmayer, jr., was the only child of said marriage. Henry W. Conner died in 1861, and W. C. Courtney, James Conner and H. W. Conner, jr., were executors of his estate; James Conner also being trustee of the share left to Elizabeth L. Staudenmayer, and during his temporary absence William C. Courtney acted for him, and paid to Mrs. Staudenmayer money from time to time from said trust estate. In the fall of 1883, Mrs. Staudenmayer died, leaving as her heirs her husband and her son, and William C. Courtney was administrator of her estate until his death in December, 1885; Maria L. Courtney, his widow, being his executrix and sole devisee and legatee, but she never filed an inventory of the assets of his estate. After the civil war, and until the time of his death, W. C. Courtney was in straightened circumstances financially. He paid to L. R. Staudenmayer, sr., $59.25 on his share of the estate of Mrs. Staudenmayer. After Staudenmayer and wife left Atchison for the south, A. G. Otis became the agent of Mr. Staudenmayer as to the collection of rents and payment of taxes on the property, (the rents being small in amount; the land being mostly unimproved,) and said A. G. Otis accounted to Mr. Staudenmayer therefor. On April 27, 1887, L. R. Staudenmayer, sr., then residing in North Carolina, executed to R. B.

Drury a deed for said land, and also for some town lots in Atchison, the deed by mistake purporting to convey the whole title instead of an undivided half of the land.   On May 31, 1887, R. B. Drury and his wife conveyed to Charles J. Drury and Robert Mc-Crie, each, an undivided one-third of the undivided one-half of said quarter-section.   On July 8, 1887, said R. B. Drury, Charles J. Drury and Robert Mc-Crie commenced their action for the partition of said land, making L. R. Staudenmayer, sr., L. R. Staudenmayer, jr., and three tenants on the land defendants. On November 9, 1887, by leave of court, said Maria L. Courtney, as executrix of the estate of William C. Courtney, deceased, was made a party defendant; and she filed her cross-petition, asking judgment upon said promissory notes, with interest from one year after the dates of their maturity, (credits appearing thereon for interest up to such dates and one year thereafter,) and for the foreclosure of said mortgage. L. R. Staudenmayer, sr., answered said cross-petition, and alleged, in substance, that by an arrangement between himself and William C. Courtney the indebtedness was paid by the conveyance of the land to Mrs. Staudenmayer, and was accounted for in the dealings of said William C. Courtney with the trust estate left to Mrs. Staudenmayer by her father on his death ; but the answer is quite vague and indefinite in this respect.   L. R. Staudenmayer, jr., replied to the cross-petition of Maria L. Courtney, alleging, among other things, that the notes had been fully paid and satisfied.   On March 27, 1890, the cause came on for trial between the plaintiffs and the defendants ; but it had not proceeded far when the plaintiffs asked leave to file a supplemental petition, which was granted, and the case, as between the plain-

tiffs and the defendants, was continued for the term, but the trial was allowed to proceed as between Maria L. Courtney, executrix, and her codefendants, L. R. Staudenmayer, sr., and L. R. Staudenmayer, jr. Some of the facts were agreed to, and evidence was offered as to others, and Maria L. Courtney, executrix, rested her case, when the Staudenmayers announced that they had no testimony to offer, but would rely entirely upon a presumption of payment arising from lapse of time. Said Maria L. Courtney then offered in evidence the report of the case of *Richbourg v. Richbourg*, in Harper's Equity Report (p. 139) of cases determined in the court of appeals in South Carolina, for the purpose of showing that, by the law of that state, it was improper and illegal for a trustee or administrator to set off, against a balance due by him as such to a distributee of the estate, a debt due him individually from such distributee, and also the transcript of the record of a case commenced in the court of common pleas of the county of Charleston, South Carolina, October 19, 1883, wherein L. R. Staudenmayer, jr., was plaintiff, and William C. Courtney and Henry W. Conner, surviving executors of H. W. Conner, deceased, and Mrs. Sallie E. Conner, executrix of James Conner, deceased, were defendants, for the purpose of showing full settlement of the trust estate of Elizabeth L. Staudenmayer derived from her father, and all payments made therefrom, and for what purpose and to whom made, and to show that no payment of the mortgage was made therefrom; but this testimony was excluded, and the court found that the presumption of payment had arisen from lapse of time, and rendered judgment against said Maria L. Courtney, and decreed that said notes and mortgage had been fully paid, discharged, and satisfied, and that the

mortgage constituted no lien upon said land. Maria
L. Courtney brought the judgment to this court for
review, since which time L. R. Staudenmayer, sr.,
died, and the action has been revived against his ad-
ministrator, B. C. Wood. The opinion herein was
filed February 8, 1896.

*Thomas J. White*, for plaintiff in error.

*C. D. Walker*, and *J. L. Berry*, for defendant in error
B. C. Wood, as administrator; *Waggener, Horton &
Orr*, of counsel.

The opinion of the court was delivered by

MARTIN, C. J.: A period of 27 years elapsed from
the maturity of the last note and the indorsement of
interest paid thereon before any attempt was made
to recover upon the indebtedness, or to foreclose the
mortgage, yet the action was not barred by our Kan-
sas statute of limitations because of the non-residence
and absence of the defendants (Civil Code, § 21), and
the South Carolina statute was not pleaded. At the
common law a presumption of payment arises after
the lapse of 20 years, and the principal question in
this case is whether such presumption obtains in this
state, notwithstanding the statute of limitations. It
is claimed by the plaintiff in error that the common
law is adopted in this state only in aid of the general
statutes, and as modified by constitutional and stat-
utory law, judicial decisions, and the condition and
wants of the people (Gen. Stat. 1889, ¶ 7281), and
that the doctrine of the presumption of payment from
the lapse of time is inconsistent with our statutes of
limitation, and therefore cannot be recognized. In
England, however, this presumption arises, and is
given effect, in the courts both of law and equity,

notwithstanding the limitation acts. In the case of
*Smith v. Clay*, decided in 1767, and a report of which
may be found in 3 Brown, 640, Lord Camden said :
"A court of equity . . . has always refused
its aid to stale demands, where the party has slept
upon his right and acquiesced for a great length
of time. . . . Laches and neglect are always
discountenanced, and therefore, from the beginning
of this jurisdiction, there was always a limitation to
suits in this court." And in *Hovenden v. Lord An-
nesley*, 2 Sch. & Lef. 607, 636, Lord Redesdale said,
"that every new right of action in equity that ac-
crues to the party, whatever it may be, must be acted
upon at the utmost within 20 years."

The federal courts have declared the same doctrine,
from an early day down to the present time, refusing,
independently of the statute of limitations, to en-
tertain and enforce stale demands. (*Piatt v. Vattier*,
9 Pet. 405, 416, 417 ; *McKnight v. Taylor*, 1 How. 161 ;
*Bowman v. Wathen*, 1 id. 189, 193 ; *Speidel v. Henrici*,
120 U. S. 377, 387, and cases cited.) The state courts
very generally hold the same doctrine. Several of
the decisions are cited in the foregoing cases from the
supreme court of the United States, and we will refer
to a few others, as follows : *Cheever v. Perley*, 11 Allen,
584 ; *Kellogg v. Dickinson*, 147 Mass. 432, 437, and
cases cited ; *Bean v. Tonnele*, 94 N. Y. 381, 385, and
cases cited ; *Matter of Accounting of Neilley*, 95 id. 382,
390 ; *Lash v. Von Neida*, 109 Pa. St. 207 ; *Gregory v.
Commonwealth*, 121 id. 611 ; *Shubrick v. Adams*, 20 S.
C. 49, 53 ; *Wright v. Mars*, 22 id. 585 ; *Dickson v.
Gourdin*, 26 id. 391 ; *Stimis v. Stimis*, 33 Atl. Rep.
(N. J. Eq.) 468.

The presumption of payment from lapse of time
differs essentially from a statute of limitations. The

presumption may be rebutted by sufficient evidence, no matter how long the time may be; but a statute of limitations cuts off the right of action, although it may be admitted that no payment has ever been made. The presumption of payment is based upon the experience of mankind that vouchers, acquittances and evidences of payment are not usually preserved from one generation to another; that creditors usually desire their own without waiting a score of years upon their debtors; and that, where there has been no recognition of the claim by the debtor, and the creditor has forborne to assert a right for so long a time, it is most probable that his claim has been in some way satisfied. The cross-petition for foreclosure in this case was in the usual form. No explanation or excuse was given for the long delay in the assertion of any right, and this seems to be necessary under several of the authorities cited. But, if this defect of pleading had been remedied, yet the facts found, and the evidence received and rejected, were insufficient to establish non-payment; and therefore the presumption of payment from lapse of time was properly held by the court below to be effective as a bar to the action, and the judgment must be affirmed.

All the Justices concurring.